No. 101,622

STATE OF KANSAS, *Appellee*, v. CANDY S. DANIEL, *Appellant*.

(242 P.3d 1186)

Opinion filed November 19, 2010.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*James R. Watts*, assistant county attorney, argued the cause, and *Steve Six*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Candy Starlene Daniel appeals her conviction of possession of methadone, which was found during a warrantless search of her vehicle following her arrest for driving with a suspended license. The district court determined the search lawful under K.S.A. 22-2501(c), which at the time authorized certain searches incident to an arrest for the limited purpose of "discovering the fruits, instrumentalities, or evidence of a crime."

A unique issue arises because K.S.A. 22-2501(c) was declared unconstitutional while Daniel was appealing her conviction based on the warrantless search of her vehicle. See *State v. Henning*, 289 Kan. 136, 148-49, 209 P.3d 711 (2009), which applied *Arizona v. Gant*, 556 U.S. 332, 173 L. Ed. 2d 485, 129 S. Ct. 1710 (2009)

(vehicle search without warrant prohibited unless arrestee is within reaching distance of passenger compartment at time of search or there is reasonable belief the vehicle contains evidence of the crime of the arrest).

The State concedes that under *Gant* and *Henning* the search was illegal, so the usual rule would require exclusion of the illegally seized evidence. But the State asks us to salvage Daniel's conviction by applying a good-faith exception to the exclusionary rule. The United States Supreme Court has recognized some good-faith exceptions when it was determined an officer acted in objectively reasonable reliance of certain circumstances outside of the officer's control. See *Herring v. United States*, 555 U.S. 135, 143, 172 L. Ed. 2d 496, 129 S. Ct. 695 (2009) (officer relied on negligently maintained police records); *Illinois v. Krull*, 480 U.S. 340, 349-50, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987) (officer relied on statute); *United States v. Leon*, 468 U.S. 897, 922-23, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984) (officer relied on facially valid warrant). To date, this court has applied a good-faith exception only when the officer relied on a warrant subsequently determined to be unsupported by probable cause. *State v. Hoeck*, 284 Kan. 441, 163 P.3d 252 (2007) (applying *Leon*). The State argues the officer who searched Daniel's vehicle reasonably relied on both the facial validity of K.S.A. 22-2501(c) and then-existing case law authorizing the search.

This court has not previously considered whether to apply a good-faith exception to the exclusionary rule based upon an officer's good faith reliance on a statute. Even when we struck down K.S.A. 22-2501(c) in *Henning*, we did not address whether a good-faith exception saved the illegally seized evidence from exclusion. We simply affirmed the district court's suppression of that evidence. 289 Kan. at 148-49. Similarly, the United States Supreme Court in *Gant* did not address whether a good-faith exception was applicable when it affirmed suppression of the challenged evidence at issue in that case. See 173 L. Ed. 2d at 497-501. Daniel understandably argues that *Gant* and *Henning* support suppressing the evidence in her case, and that point carries with it a quantum of fairness, as well as support from some other jurisdictions. *United*

*States v. Gonzalez*, 578 F.3d 1130, 1132 (9th Cir. 2009) (holding good-faith exception inapplicable when officers relied on circuit's erroneous pre-*Gant* jurisprudence), *reh. and reh. en banc denied* 598 F.3d 1095, 1096 (9th Cir. 2010); *United States v. Debruhl*, 993 A.2d 571, 589 (D.C. Cir. 2010) (same); *People v. McCarty*, 229 P.3d 1041, 1045-46 (Colo. 2010) (same); *Valesquez v. Com.*, 2010 WL 567325, at *3 (Ky. App. 2010) (unpublished opinion) (same).

But our Court of Appeals has taken a different view and recently applied the good-faith exception under facts similar to this case. See *State v. Karson*, 44 Kan. App. 2d 306, 314, 235 P.3d 1260 (2010) (affirming conviction on drug charges based on evidence discovered during warrantless search of a parked truck after arresting the owner for outstanding traffic violations); *State v. Carlton*, No. 103,086, unpublished opinion filed July 9, 2010, *pet. for rev.* filed August 5, 2010 (pending) (reversing district court's suppression of drugs and paraphernalia discovered in warrantless vehicle search incident to arrest for driving with suspended license). Many other jurisdictions also have followed this approach. See, *e.g.*, *United States v. McCane*, 573 F.3d 1037, 1041-45 (10th Cir. 2009), *cert. denied* 176 L. Ed. 2d 759 (2010) (good-faith exception applies when officers relied on circuit's then-prevailing pre-*Gant* jurisprudence); see also *United States v. Davis*, 598 F.3d 1259, 1264 (11th Cir. 2010) (same); *United States v. Lopez*, 655 F. Supp. 2d 720, 725 (E.D. Ky. 2009) (same); *United States v. Gray*, 2009 WL 4739740, at *4 (D. Neb. 2009) (unpublished opinion) (same); *State v. Baker*, 229 P.3d 650, 663-64 (Utah 2010) (same); *State v. Dearborn*, 786 N.W.2d 97, 107-10 (Wisc. 2010) (same).

As explained below, we hold prior precedent compels recognizing a good-faith exception when it can be determined the officer conducting the search incident to arrest was acting in objectively reasonable reliance on K.S.A. 22-2501(c). This exception is applicable for searches occurring before *Gant* was decided on April 21, 2009. Accordingly, we affirm Daniel's conviction.

## Factual and Procedural Background

The facts are stipulated by the parties and not in dispute. Augusta Police Officer Matthew Meckel saw Daniel driving and knew

her driver's license was suspended. By the time Meckel pulled his patrol vehicle behind Daniel's car, she had parked in a private driveway and was walking away. After confirming Daniel's license was suspended during his initial contact with her, Meckel handcuffed Daniel and patted her down. Nothing illegal was found. Meckel placed her in the back of his patrol car, where she was secured and monitored by a second officer who had subsequently arrived at the scene. Meckel then searched Daniel's vehicle without her consent and found her purse.

Meckel testified he could not properly inspect the purse's contents at the scene because of inclement weather, so he took the purse to the police station, where he discovered the drugs. The record does not reflect how much time elapsed between the arrest and the officer's search of the purse, but it is fair to assume the passenger compartment search was much closer in time to Daniel's arrest than the search of the purse at the police station.

The State charged Daniel with possession of methadone and driving with a suspended license. Prior to trial, Daniel filed a motion to suppress the methadone, claiming the search of her vehicle and purse violated the Fourth Amendment of the United States Constitution, §15 of the Kansas Constitution Bill of Rights, K.S.A. 22-2501, and K.S.A. 22-2509. See K.S.A. 22-3216(1) ("[A] defendant aggrieved by an unlawful search and seizure may move . . . to suppress as evidence anything so obtained.").

In response, the State conceded Meckel searched the vehicle and purse without a warrant simply because those searches were incident to Daniel's arrest for driving with a suspended license. The State did not contend Daniel consented to the search of her vehicle and purse. Furthermore, the officer acknowledged he had no suspicion Daniel had committed any other crime and was not searching for evidence related to the arrest for driving with a suspended license. It also is understood from these facts that officer safety at the scene was not the purpose for the search.

Based upon testimony at the suppression hearing, the district court found that "the officer stated no suspicion as to discovering any fruits, instrumentalities, or evidence from *the* crime of driving while suspended, but the officer was making the search for pur-

poses of discovering the fruits, instrumentalities, or evidence of *a* crime." (Emphasis added.) These findings conformed to the language in K.S.A. 22-2501(c). Daniel's suppression motion was overruled. She asked the court to reconsider and that motion also was overruled.

In finding the challenged search of the vehicle's interior and the purse inside fell within the parameters of K.S.A. 22-2501(c), the district court necessarily concluded that (a) the search occurred incident to an arrest in an "area within [Daniel's] immediate presence," *i.e.*, it fell within the physical scope of the statute's authorized vicinity of search; and (b) the search was conducted for one of the statutory purposes stated, *i.e.*, "discovering the fruits, instrumentalities, or evidence of a crime." K.S.A. 22-2501(c).The parties and the district court agreed to preserve the legal question concerning the search's legality for this appeal.

Based upon these rulings, a trial was held on stipulated facts. Daniel was convicted of possession of methadone in violation of K.S.A. 65-4160 and driving while her license was suspended in violation of K.S.A. 8-262(a)(1). On the possession conviction, the court sentenced Daniel to 12 months' probation, with a 13-month underlying prison term. Daniel filed a timely notice of appeal. Less than a year after her conviction and while her appeal was pending, *Gant* and *Henning* were decided. We have jurisdiction under K.S.A. 20-3018(c) (transfer on court's own motion).

ANALYSIS

*Standard of Review*

On a motion to suppress evidence, this court reviews the factual findings underlying the trial court's suppression decision by a substantial competent evidence standard and the legal conclusion drawn from those factual findings by a de novo standard. This court does not reweigh evidence. *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007). In this case, the facts are not disputed, so we exercise unlimited de novo review of the district court's legal conclusions.

*Suppression as a remedy for illegally seized evidence*

Our state and federal constitutions protect citizens from unlawful searches and seizures. *Gant*, 556 U.S. at 338; see *State v. Ransom*, 289 Kan. 373, 380, 212 P.3d 203 (2009). Warrantless searches are considered unreasonable and invalid unless they fall within one of the recognized exceptions to the warrant requirement. *Henning*, 289 Kan. at 148; *Thompson*, 284 Kan. at 776. The State bears the burden to demonstrate a challenged search was lawful. *Henning*, 289 Kan. at 148; *State v. Ibarra*, 282 Kan. 530, 533, 147 P.3d 842 (2006). In this case, it is undisputed there was no warrant authorizing the search of Daniel's car, and the State agrees the search was unlawful under *Gant* and *Henning*. The only remaining inquiry is whether the appropriate remedy is to suppress the evidence seized. This is a question of law.

Neither the Fourth Amendment nor § 15 of the Kansas Constitution Bill of Rights expressly prohibits the use of evidence obtained in violation of their respective protections. Instead a judicially created remedy exists to prevent the use of unconstitutionally obtained evidence in a criminal proceeding against the victim of the illegal search. *Krull*, 480 U.S. at 347; see *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, *reh. denied* 386 U.S. 871 (1961); *Weeks v. United States*, 232 U.S. 383, 58 L. Ed. 652, 34 S. Ct. 341 (1914); *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 640, 176 P.3d 938 (2008). This exclusionary rule operates to protect Fourth Amendment rights through deterrence, and it is not the defendant's personal constitutional right. *Leon*, 468 U.S. at 906; *United States v. Calandra*, 414 U.S. 338, 348, 38 L. Ed. 2d 561, 94 S. Ct. 613 (1974); *Martin*, 285 Kan. at 640; *State v. Turner*, 257 Kan. 19, 21, 891 P.2d 317 (1995). In creating exceptions to the exclusionary rule, the United States Supreme Court in *Krull* explained the rule only applies when deterrence can be achieved:

"As with any remedial device, *application of the exclusionary rule properly has been restricted to those situations in which its remedial purpose is effectively advanced.* Thus, in various circumstances, the Court has examined whether the rule's deterrent effect will be achieved, and has weighed the likelihood of such deterrence against the costs of withholding reliable information from the truth-seeking process. [Citations omitted.]" (Emphasis added.) 480 U.S. at 347.

As indicated in this quotation, questions regarding whether evidence should be excluded as a sanction for a Fourth Amendment violation should be answered by weighing the costs and benefits of preventing the prosecution's use of the illegally obtained evidence. See *Leon*, 468 U.S. at 907. In *Leon*, the Supreme Court held the use of evidence that was unlawfully obtained was allowed if officers acted in reasonable reliance on a search warrant issued by a detached and neutral magistrate, even if it was determined later the magistrate erred and probable cause did not support the warrant. 468 U.S. at 913, 922-26. In so holding, the Supreme Court considered whether the deterrent effect that normally justified the exclusionary rule was likely to be realized under the particular factual circumstances found in the case. The Supreme Court concluded that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918.

The result in *Leon* was a determination that when a search occurred based upon a warrant, the exclusionary rule applied only if: (1) the magistrate was deliberately misled by false information when issuing the warrant; (2) the magistrate wholly abandoned the detached and neutral role required; (3) there was so little indicia of probable cause in the affidavit that it would be entirely unreasonable for an officer to believe the warrant was valid; or (4) the warrant so lacked specificity that officers could not determine the place to be searched or the items to be seized. 468 U.S. at 923.

This court has repeatedly accepted the underlying principle in *Leon*, *i.e.*, that a good-faith exception to the exclusionary rule might be applicable if a search was conducted pursuant to a warrant that was later to be found lacking in probable cause, even though we have disagreed how to apply *Leon*'s stated criteria. See *Hoeck*, 284 Kan. at 455-65; *State v. Longbine*, 257 Kan. 713, 720-22, 896 P.2d 367 (1995), *disapproved on other grounds State v. Hicks*, 282 Kan. 599, 147 P.3d 1076 (2006); *State v. Ratzlaff*, 255 Kan. 738, 751-55, 877 P.2d 397 (1994); *State v. Doile*, 244 Kan. 493, 501-03, 769 P.2d 666 (1989), *overruled on other grounds Horton v. California*, 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301 (1990).

After *Leon*, the United States Supreme Court extended the good-faith exception to the exclusionary rule in other circumstances. See *Herring*, 555 U.S. at 147-48, (negligently maintained police records); *Arizona v. Evans*, 514 U.S. 1, 14-16, 131 L. Ed. 2d 34, 115 S. Ct. 1185 (1994) (inaccurate court records); *Krull*, 480 U.S. at 349-50 (statute). In each extension, the Supreme Court has continued to focus on whether the remedial purpose of the exclusionary rule would be fulfilled if the illegally obtained evidence was suppressed. Our court has not had occasion to consider these other exceptions.

*A good-faith exception for objectively reasonable reliance on a statute*

We interpret § 15 of the Kansas Constitution Bill of Rights to provide the same protection from unlawful government searches and seizures as the Fourth Amendment to the federal Constitution. *Henning*, 289 Kan. at 145; *State v. Wood*, 190 Kan. 778, 788, 378 P.2d 536 (1963). "[R]egardless of whether the statute is challenged under the federal or state Constitution, we consider ourselves bound by United States Supreme Court precedent." *Henning*, 289 Kan. at 145. In the past, this court has recognized that while it could extend state constitutional protections under § 15 of the Kansas Constitution Bill of Rights beyond the federal guarantees provided by the Fourth Amendment, it has declined to do so. *Hoeck*, 284 Kan. at 463; *State v. Schultz*, 252 Kan. 819, 824, 850 P.2d 818 (1993).

As noted above, the United States Supreme Court has held the exclusionary rule may not apply to evidence obtained by police acting in objectively reasonable reliance upon a statute that was subsequently found to violate the Fourth Amendment. *Krull*, 480 U.S. at 349 ("The approach used in *Leon* is equally applicable to the present case."). The Supreme Court reasoned that excluding evidence obtained when police are enforcing a statute that is later determined to be unconstitutional would not serve the rule's purpose because it would have no deterrent effect on law enforcement. 480 U.S. at 349. The *Krull* Court explained:

"Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written. To paraphrase the Court's comment in *Leon*: 'Penalizing the officer for the [legislature's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.' [Citation omitted.]" 480 U.S. at 349-50.

Beyond looking to the deterrent effect on police, the Supreme Court also rejected an argument that applying the exclusionary rule in this context would deter legislators from enacting unconstitutional statutes. It said; "[W]e are not willing to assume now that there exists a significant problem of legislators who perform their legislative duties with indifference to the constitutionality of statutes they enact." 480 U.S. at 352 n.8. The Supreme Court also noted legislators had not previously been the focus of the judicially created exclusionary rule, that legislators' role in the criminal justice system was to enact laws for the purpose of establishing and perpetuating that system, and that legislators' deliberations about statutes were "significantly different" from the judgments made by law enforcement in combating crime. 480 U.S. at 351. The Court then said:

"Before assuming office, state legislators are required to take an oath to support the Federal Constitution. [Citation omitted.] Indeed, by according laws a presumption of constitutional validity, courts presume that legislatures act in a constitutional manner. [Citations omitted.]" 480 U.S. at 351.

Despite these assumptions, the Supreme Court was not blind to the possibility that situations might arise in which an obviously unconstitutional statute could be enacted by a legislature yielding "to the temptation offered by the Court's good-faith exception." 480 U.S. at 366 (O'Connor, J., joined by Brennan, Marshall, and Stevens, JJ., dissenting) ("Providing legislatures a grace period during which the police may freely perform unreasonable searches in order to convict those who might have otherwise escaped creates a positive incentive to promulgate unconstitutional laws."). As a safeguard, the *Krull* majority required the good-faith exception to

be dependent upon whether the officer could demonstrate "objectively reasonable reliance" on the statute at issue, explaining:

"A statute cannot support objectively reasonable reliance if, in passing the statute, the legislature wholly abandoned its responsibility to enact constitutional laws. Nor can a law enforcement officer be said to have acted in good-faith reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional. [Citation omitted.] As we emphasized in *Leon*, the standard of reasonableness we adopt is an objective one; the standard does not turn on the subjective good faith of individual officers. [Citation omitted.]" 480 U.S. at 355.

In applying these principles to the facts in *Krull* to determine whether the officer's reliance on the statute in question was objectively reasonable, the Court noted that prior case law had supported similar statutes, the statute appeared to be aimed at a legitimate state purpose, and the constitutional infirmity with the statute was not "sufficiently obvious as to render a police officer's reliance upon the statute objectively unreasonable." 480 U.S. at 358-59. Based on these findings, the Supreme Court determined the officer relied, in objective good faith, on a statute that appeared legitimately to allow a warrantless search. 480 U.S. at 360.

We find our case law tying the Kansas Constitution Bill of Rights, §15 provisions to United States Supreme Court precedent compels our recognition of the good-faith exception articulated in *Krull*. *Hoeck*, 284 Kan. at 463; *Schultz*, 252 Kan. at 824. *Krull* is a logical extension of *Leon*, which we have not hesitated to apply in Kansas in the context of search warrants issued by a magistrate. And while we recognize that Justice O'Connor's concerns expressed in *Krull* are legitimate, the safeguards required by *Krull* for a court to examine whether law enforcement reliance on a particular statute was objective and reasonable under the circumstances militate against the possibility for legislative mischief that might seek to take unfair advantage of this exception.

So with the determination made to recognize the good-faith exception articulated in *Krull*, we next consider in this case whether the officer could objectively and reasonably rely on K.S.A. 22-2501(c) for his warrantless search of Daniel's vehicle and purse.

*Objective and Reasonable Reliance on K.S.A. 22-2501(c)*

K.S.A. 22-2501 states:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of

"(a) Protecting the officer from attack;

"(b) Preventing the person from escaping; or

"(c) Discovering the fruits, instrumentalities, or evidence of a crime."

As readily seen, the statute authorizes a search incident to arrest, but it expressly limits both the physical scope and purpose of that search. See *State v. Conn*, 278 Kan. 387, 391, 99 P.3d 1108 (2004); *State v. Anderson*, 259 Kan. 16, 22, 910 P.2d 180 (1996). The physical scope is specified to be the arrestee's "immediate presence" and the limited purposes are set out in the subsections. Conforming to the *Krull* rationale, our task is to determine whether a law enforcement officer should have known K.S.A. 22-2501(c) was unconstitutional. See *Krull*, 480 U.S. at 355. That inquiry must focus on both the search's scope and purpose as stated in the statute, while also considering the factual circumstances of the search itself.

In Daniel's case, the challenged search began in the passenger compartment of a parked vehicle after Daniel was handcuffed and secured inside a patrol car. It ended when the officer searched Daniel's purse after transporting it and Daniel to the police station. Officer safety and escape from custody do not justify the search, so subsections (a) and (b) are not to be considered. The officer admitted he was not looking for evidence to support the crime of the arrest (driving with a suspended license) and had no probable cause to believe any other crime had been committed. When the search occurred, Daniel already had been handcuffed and secured inside a patrol vehicle, so the passenger compartment was not within her reach.

As to the physical scope of Daniel's search, we consider whether the officer could have objectively and reasonably believed K.S.A. 22-2501(c) was unconstitutional before he searched the passenger compartment when Daniel was no longer in her vehicle. Daniel does not argue the car and purse were outside Daniel's immediate

vicinity at the time of the search. Daniel argues only that the search's scope was invalid based upon *Gant's* holdings under the Fourth Amendment. This inquiry is premised solely on the constitutionality of the statute. Compare *State v. Davison*, 41 Kan. App. 2d 140, 144-48, 202 P.3d 44 (2009), *pet. for rev.* filed March 2, 2009 (pending) (arguing once a defendant is handcuffed and secured within a patrol car, the defendant's vehicle is no longer within the "immediate presence" limitation imposed by K.S.A. 22-2501). Our second inquiry is whether the officer could have objectively and reasonably believed the statute was clearly unconstitutional in authorizing a warrantless search incident to arrest for evidence of any crime. Finally, we will consider whether there is any indication the legislature wholly abandoned its responsibility to enact constitutional laws when it enacted K.S.A. 22-2501(c). See *Krull*, 480 U.S. at 355.

The answer to what the officer could objectively and reasonably believe about the Kansas statute from both the constitutional scope and purpose of his search is readily found in *Gant*. The Court's decision details the lower courts' interpretation (and ultimate misinterpretations) of Fourth Amendment jurisprudence regarding warrantless automobile searches incident to arrest since *New York v. Belton*, 453 U.S. 454, 460, 69 L. Ed. 2d 768, 101 S. Ct. 2860, reh. denied 453 U.S. 950 (1981). The Court observed: "[O]ur opinion [in *Belton*] *has been widely understood to allow a vehicle search incident to arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search.*" (Emphasis added.) *Gant*, 556 U.S. at 341. The Court's opinion also collects numerous lower court decisions upholding wide ranging warrantless police searches of vehicles incident to arrest, including those that upheld searches even when the handcuffed arrestee had left the scene. See 556 U.S. at 342 & n.2-3. Indeed, it was this broad application of *Belton* by a predominate number of lower courts that was the catalyst for the Court to consider *Gant*.

After *Belton*, in *Thornton v. United States*, 541 U.S. 615, 158 L. Ed. 2d 905, 124 S. Ct. 2127 (2004), a majority of the Court held that *Belton* allowed a warrantless search of a person's car, even

when the officer did not make contact until the person arrested had left the vehicle. In doing so, the Court found a

"need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment, justifies the sort of generalization which *Belton* enunciated. *Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment.*" (Emphasis added.) 541 U.S. at 623.

In concurring in part in *Thornton,* Justice O'Connor observed that since *Belton:* "[L]ower court decisions seem now to treat the ability to search a vehicle incident to arrest of a recent occupant *as a police entitlement rather than as an exception . . . .*" (Emphasis added.) *Thornton,* 541 U.S. at 624. Justice Scalia similarly noted: "Reported cases involving this precise factual scenario—a motorist handcuffed and secured in the back of a squad car—are legion. [Citations omitted.] Some courts uphold such searches even when the squad car carrying the handcuffed arrestee has already left the scene. [Citation omitted.]" 541 U.S. at 628 (Scalia, J., joined by Ginsburg, J., concurring in judgment).

The United States Court of Appeals for the Tenth Circuit, which is the federal circuit court with jurisdiction to hear Fourth Amendment controversies arising from Kansas, recently conceded that it too had frequently interpreted *Belton* "far beyond the underlying justifications" for warrantless vehicle searches incident to arrest, even if there was no possibility the arrestee could gain access to the vehicle at the time of the search. See *United States v. McCane,* 573 F.3d 1037, 1041-42 (10th Cir. 2009) ("The [warrantless vehicle] search in this case was wholly consistent with and supported by this court's precedent prior to *Gant.*"); *United States v. Humphrey,* 208 F.3d 1190, 1201-02 (10th Cir. 2000); *United States v. Cotton,* 751 F.2d 1146, 1148-50 (10th Cir. 1985); *United States v. Murphy,* 221 Fed. Appx. 715 (10th Cir. 2007) (unpublished opinion).

Prior to *Gant,* our court had not had occasion to consider and approve a factual scenario similar to Daniel's search, but we had addressed *Belton* and its application in rather broad terms. In *State v. McClain,* 258 Kan. 176, 183, 899 P.2d 993 (1995), we described

*Belton* as creating a "bright-line rule" that when a policeman has made a lawful custodial arrest, the officer may "as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." We went on to explain that the search could include examining the contents of any containers found within the passenger compartment. This court added: "Since its filing in 1981, Kansas courts have consistently applied *Belton* to allow an officer to search the passenger compartment of an automobile when its occupant is arrested." *McClain,* 258 Kan. at 184; see *State v. White,* 230 Kan 679, 680, 640 P.2d 1231 (1982); *State v. Press,* 9 Kan. App. 2d 589, Syl. ¶ 3, 685 P.2d 887, *rev. denied* 236 Kan. 877 (1987).

Against this backdrop from the case law precedent, we add a decision from our Court of Appeals released approximately 6 weeks before Daniel's arrest. In *State v. Henning,* 38 Kan. App. 2d 706, 722-23, 171 P.3d. 660 (2007), *rev'd* 289 Kan. 136, 209 P.3d 711 (2009), that court said: "We hold that when the Kansas Legislature amended [K.S.A.] 22-2501(c), *it adopted a constitutional statute* which expanded the scope of the permissible purpose of a search incident to a lawful arrest in Kansas consistent with *Belton.*" (Emphasis added.) Granted, this court later reversed the Court of Appeals in light of *Gant,* see 289 Kan. at 147-49, but that does not matter because we are concerned only with the officer's objectively reasonable reliance on the statute's constitutionality at the time the officer acted. We find that a Court of Appeals decision only 6 weeks earlier upholding the constitutionality of the very statute the officer was acting under in searching Daniel's vehicle and purse is a strong indicator of the officer's objectively reasonable reliance on that statute. Coupled with the predominate federal and state case law noted above that preceded the Court of Appeal's decision, a belief that the statute was valid was objectively reasonable.

Finally, we consider the available legislative history of K.S.A. 22-2501(c) to determine whether there is any suggestion the legislature "wholly abandoned its responsibility to enact constitutional laws" in its passage of the statute. See *Krull,* 480 U.S. at 355. In this endeavor, we are aided by two thorough reviews of the legislative history behind this provision made by this court and the

Court of Appeals. See *Henning*, 289 Kan. at 142-45; *Henning*, 38 Kan. App. 2d at 714-16.

It is not necessary to burden this opinion with the same detailed recitation of the statute's legislative deliberations and history that is contained in those two opinions. It is sufficient to simply state that neither opinion expresses any suspicion that the debate over the statute's provisions reflected an abandonment of the legislature's responsibility to enact constitutional laws. In fact, the Court of Appeals specifically found based on its review of this history that the legislature's intent in passing the statute was to allow searches incident to arrest to extend to any crime "as constitutionally allowed" by *Belton*. See *Henning*, 38 Kan. App. 2d 706, Syl.

Following the precedent set by *Krull*, we find that at the time of the search of Daniel's vehicle and purse that a reasonable officer would not have known that K.S.A. 22-2501(c) was unconstitutional. The officer's objectively reasonable reliance on K.S.A. 22-2501(c) is demonstrated by (a) the substantial case law precedent across the country upholding similar searches, which lends added facial validity to the statute; (b) an appellate court decision directly on point that was valid at the time of Daniel's search; and (c) the statute's legislative history. For these reasons, we affirm the district court's denial of Daniel's motions to suppress.

Affirmed.

DAVIS, C.J., not participating.

\* \* \*

JOHNSON, J., dissenting: I respectfully dissent. The majority makes a facially seductive case for expanding the scope of the good-faith exception to the exclusionary rule in this state to permit the admission of illegally obtained evidence where the law enforcement officer is deemed to have reasonably relied on a statutory provision. However, I do not believe that we are bound to make such an exception for statutory reliance, simply because the United States Supreme Court has recognized it, and I would not do so. Further, under the facts of this case, I submit that the law enforcement officer was not relying on a statutory provision but rather the justification for the search emanated from certain cases interpret-

ing *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, *reh. denied* 453 U.S. 950 (1981).

The majority acknowledges that, to date, this state has only recognized the good-faith exception to the exclusionary rule which derived from *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984). The *Leon* exception can be applied where the law enforcement officer reasonably and in good faith relied upon a search warrant which was issued and signed by a judge, notwithstanding a later determination that the warrant was defective and the search unlawful. 468 U.S. at 922-23.

However, the majority notes that, after *Leon*, the United States Supreme Court also applied the good-faith exception where the unlawful search resulted from a law enforcement officer's objectively reasonable reliance on a statute. See *Illinois v. Krull*, 480 U.S. 340, 349-50, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987). Then, the majority opines that because our case law has interpreted §15 of the Kansas Constitution Bill of Rights as providing the same protections as the Fourth Amendment to the United States Constitution, this court is compelled to recognize the good-faith exception articulated in *Krull*. I do not accept that constraint.

The disconnect in the majority's compulsion analysis, in my view, can be found in the majority's characterization of the exclusionary rule as "a judicially created remedy," rather than as a constitutional right. 291 Kan. at 496. Even if one accepts the debatable premise that the United States Supreme Court's interpretation of the Fourth Amendment functions as a concurrent interpretation of § 15 of the Kansas Constitution Bill of Rights, the exclusionary rule is not a product of that interpretation because the rule does not emanate from either Constitution. Accordingly, this court should be free to judicially create its own remedy for the victims of an illegal search in this state, *i.e.*, to set the parameters of the exclusionary rule that will be enforced in Kansas.

In my view, the *Leon* exception involves a critical element distinguishing it from the *Krull* exception. A condition precedent to the *Leon* exception is a search warrant issued by a judge. In that situation, there has been a judicial interpretation of the law and

application of that law to the facts of the particular case. Accordingly, the law enforcement officer, a member of the executive branch of government, has a legal opinion from a member of the judicial branch of government upon which the officer can then rely. In contrast, the majority would permit a law enforcement officer to perform the judicial function of interpreting a statute and applying the statutory provisions to the facts as they are being encountered by the officer. As a practical matter, the officer must necessarily rely on his or her own understanding of the statute's meaning and appropriate application, notwithstanding the majority's suggestion that the officer is simply relying on the legislature's good faith in adopting constitutional laws. I do not believe that it is appropriate to delegate to an executive branch officer the clearly judicial function of interpreting and applying the law, and I would not extend the good-faith exception in this state to include a law enforcement officer's reliance on a statute.

Even if I were to accept the majority's newly adopted reliance-on-a-statute exception, I would not find that it was applicable in this case. The statutory provision upon which the majority believes the officer was entitled to rely was the amendment to K.S.A. 22-2501(c), which changed "the crime" to "a crime." *Cf. State v. Anderson,* 259 Kan. 16, 22, 910 P.2d 180 (1996) (vehicle search for purpose of discovering evidence of crime unrelated to arrest violated preamendment version of K.S.A. 22-2501). Curiously, the legislature did not choose to be more explicit in its amendment by employing the words "any crime." Nevertheless, as the majority notes, the legislative history suggests and the Court of Appeals found that the amendment was intended to expand "the scope of the permissible purpose of a search incident to a lawful arrest in Kansas consistent with *Belton.*" 291 Kan. at 504, quoting *State v. Henning,* 38 Kan. App. 2d 706, 722-23, 171 P.3d 660 (2007), *rev. denied* 289 Kan. 136, 209 P.3d 711 (2009).

Accordingly, the officer was not relying solely on the new text of K.S.A. 22-2501(c). Rather, to give context to the statutory amendment, the officer had to rely on the case law which had broadly interpreted and applied *Belton*. In effect, then, the majority has created a new exclusionary rule exception based upon a

good-faith reliance on lower court decisions. The United States Supreme Court has not gone that far, even when presented the opportunity in *Arizona v. Gant*, 556 U.S. 332, 173 L. Ed. 2d 485, 129 S. Ct. 1710 (2009).

The *Gant* majority acknowledged that cases interpreting *Belton* to allow a vehicle search incident to arrest when the recent occupant of the vehicle had been handcuffed and secured in a patrol car are "legion." 556 U.S. at 342. Yet, the *Gant* majority rejected the notion that its result should be dictated by law enforcement's reliance on that multitude of case precedent. Specifically, the majority said:

> "We do not agree with the contention in Justice Alito's dissent . . . that consideration of police reliance interests requires a different result. Although it appears that the State's reading of *Belton* has been widely taught in police academies and that law enforcement officers have relied on the rule in conducting vehicle searches during the past 28 years, many of these searches were not justified by the reasons underlying the *Chimel*[ *v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969),] exception. Countless individuals guilty of nothing more serious than a traffic violation have had their constitutional right to the security of their private effects violated as a result. The fact that the law enforcement community may view the State's version of the *Belton* rule as an entitlement does not establish the sort of reliance interest that could outweigh the countervailing interest that all individuals share in having their constitutional rights fully protected. If it is clear that a practice is unlawful, individuals' interest in its discontinuance clearly outweighs any law enforcement 'entitlement' to its persistence." 556 U.S. at 349.

In a footnote to the foregoing passage, the *Gant* majority apparently felt compelled to address what impact reliance may have in another context, stating: "Because a broad reading of *Belton* has been widely accepted, the doctrine of qualified immunity will shield officers from liability for searches conducted in reasonable reliance on that understanding." 555 U.S. at 349 n.11. Conspicuously, the Court did not also note that the same reasonable reliance on case precedent would shield the state from the exclusionary rule. I would not invent such a rule in this state.

For the multiple reasons stated above, I would reject the State's first-time-on-appeal argument that the unlawfully obtained evidence was admissible under a good-faith exception to the exclu-

sionary rule in this state. Accordingly, I would find the admission of the illegal evidence was reversible error.