NOT DESIGNATED FOR PUBLICATION

No. 115,859

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JIMMIE JASON DAWES,
*Appellant.*

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER,, judge. Opinion filed September 8, 2017. Affirmed.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Carissa Brinker*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt,* attorney general, for appellee.

Before MALONE, P.J., LEBEN and BRUNS, JJ.

LEBEN, J.: Jimmie Jason Dawes appeals his conviction for driving under the influence, arguing that the blood-draw evidence (which showed his intoxication) should have been excluded from trial because (1) the statute authorizing the blood draw was so obviously unconstitutional that the police couldn't reasonably and in good faith rely on it and (2) the legislature wholly abandoned its duty to pass constitutional legislation when it passed this statute. But at the time of the blood draw, no Kansas appellate court had held the statute unconstitutional, and nothing in the language of the statute would have alerted police to any obvious unconstitutionality. And Dawes points to nothing in the legislative

history to suggest that the legislature intended to pass an unconstitutional law. We affirm the district court's judgment because the police performed the blood draw in good-faith reliance on a statute later held unconstitutional.

FACTUAL AND PROCEDURAL BACKGROUND

This is the second time that Dawes' case has reached this court, so we provide only a brief factual summary. See *State v. Dawes*, No. 111,310, 2015 WL 5036690, at *1-2 (Kan. App. 2015) (unpublished opinion). Around noon one day in July 2012, Dawes was driving his motorcycle on a country road in Lyon County; while following a curve, his motorcycle left the road. Dawes later claimed that he had lost control because his foot had gotten caught underneath the peg on the motorcycle; he said he hadn't been drinking the day of the accident but had been drinking the night before. One of the law-enforcement officers who arrived at the scene of the accident noticed a "medium" odor of alcohol coming from Dawes, and another officer observed that Dawes was disoriented, swaying, and not talking very much.

Dawes was flown to Stormont-Vail Hospital in Topeka because of the severity of his injuries (he would remain in a coma for three weeks). While Dawes was unconscious in the hospital, an officer read the standard implied-consent advisories to him, and a nurse drew his blood. Police did not obtain a search warrant for the blood draw. The Kansas Bureau of Investigation analyzed the sample and found that Dawes' blood-alcohol content was above the legal limit.

The State charged Dawes with several crimes, including driving under the influence of alcohol. Dawes filed a motion to suppress the evidence from the blood test because the police hadn't had a search warrant. But the district court found that the blood draw was a reasonable search under Kansas' implied-consent law: Dawes had consented to the blood test simply by driving his motorcycle, and he hadn't revoked that consent

2

before losing consciousness, so the search was valid and the evidence didn't need to be suppressed. Dawes was convicted of DUI (his fourth or subsequent offense), driving while being declared a habitual violator, and driving too fast for conditions. The district court sentenced him to 12 months in jail and imposed a $2,500 fine.

Dawes then filed his first appeal to this court. We reversed the DUI conviction and held that the implied-consent statute was unconstitutional as applied to Dawes, so the blood draw had been an unreasonable search and seizure. But we remanded the case back to the district court to determine whether the evidence should have been suppressed or whether the good-faith exception to the exclusionary rule applied. See *Dawes*, 2015 WL 5036690, at *5-6.

On remand, the district court found that the good-faith exception to the exclusionary rule did apply in this case because law enforcement had reasonably relied on a statute that appeared to be constitutional at the time of the search, so the blood-draw evidence didn't need to be suppressed.

Dawes then filed this appeal.

ANALYSIS

Dawes argues that the district court's conclusion—that the good-faith exception applied because the police reasonably relied on the implied-consent statute to draw his blood while he was unconscious—is incorrect. Whether a court has correctly construed the good-faith exception is a question of law, so we must review that question independently, without any required deference to the district court. *State v. Hoeck*, 284 Kan. 441, 447-48, 163 P.3d 252 (2007); *State v. Althaus*, 49 Kan. App. 2d 210, 217, 305 P.3d 716 (2013).

We begin by outlining the legal context. The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights protect us from unreasonable searches or seizures by the government. *State v. Daniel*, 291 Kan. 490, 496, 498, 242 P.3d 1186 (2010). Collecting a blood sample is both a search and a seizure, so the constitutional protection of the Fourth Amendment applies. *Schmerber v. California*, 384 U.S. 757, 767, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966); *State v. Murry*, 271 Kan. 223, 226, 21 P.3d 528 (2001); *State v. Declerck*, 49 Kan. App. 2d 908, 914-15, 317 P.3d 794 (2014). That means that before collecting a blood sample, the government must generally get a warrant, because under the Fourth Amendment, a search or seizure conducted without a warrant is considered unreasonable. *State v. Johnson*, 297 Kan. 210, 223, 301 P.3d 287 (2013).

But there are some exceptions to the warrant requirement, one of which is consent—and this exception was the issue in Dawes' first appeal. *Dawes*, 2015 WL 5036690, at *5-6; see *Johnson*, 297 Kan. at 223. The State argued there that Dawes had consented to the blood test based on Kansas' implied-consent statute, which provides that anyone who drives on Kansas roads impliedly consents to have his or her breath or blood tested for alcohol or drugs. K.S.A. 2016 Supp. 8-1001(a). We held that this statute was unconstitutional as applied to Dawes because it created a categorical exception to the Fourth Amendment's warrant requirement—anyone who drove on Kansas roads and became unconscious would be subject to a blood test if the other statutory requirements were met. *Dawes*, 2015 WL 5036690, at *5. As explained more fully in that opinion, exceptions to the warrant requirement based on broad categories like this aren't allowed because whether an exception to the warrant requirement exists depends on the circumstances of the case, and categorical exceptions apply regardless of the specific circumstances. See *Missouri v. McNeely*, 569 U.S. 141, 133 S. Ct. 1552, 1563, 185 L. Ed. 2d 696 (2013). So because Dawes' implied consent wasn't a sufficient warrant exception and the police hadn't gotten a warrant, the blood test was an unreasonable search.

The usual remedy for unreasonable searches is to exclude from trial the evidence that the search produced—this is known as the exclusionary rule. *State v. Powell*, 299 Kan. 690, 694-95, 325 P.3d 1162 (2014); *Daniel*, 291 Kan. at 496. The rule doesn't come from the Constitution; it was designed by the courts to encourage law enforcement not to violate people's Fourth Amendment rights. *United States v. Leon*, 468 U.S. 897, 906-07, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984); *Daniel*, 291 Kan. at 496. By preventing the government from using evidence from an unconstitutional search against a defendant at trial, courts thereby encourage law-enforcement officers to perform constitutional searches so that the government can use discovered evidence at trial. *Leon*, 468 U.S. at 906-07.

But the exclusionary rule doesn't exclude the evidence from *every* unconstitutional search; it only applies when it will actually discourage bad police behavior. *Illinois v. Krull*, 480 U.S. 340, 347-49, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987). When the police acted reasonably but a court later finds that the search was unconstitutional for some reason, the evidence won't be excluded. This is called the good-faith exception to the exclusionary rule. It applies when (among other situations) the police perform a search or seizure that's authorized by a statute and that statute is later struck down as unconstitutional. 480 U.S. at 349-50; *Daniel*, 291 Kan. at 500. In this type of situation, the police did what they were supposed to do by following the statute—the mistake belonged to the legislature that wrote the statute, so excluding the evidence wouldn't affect police behavior and the exclusionary rule doesn't apply. *Krull*, 480 U.S. at 349-50; *Daniel*, 291 Kan. at 498-99.

Of course, since these are judge-made rules designed for a limited purpose, there are exceptions to this exception. There's no good-faith exception to the exclusionary rule if: (1) the statute is so obviously unconstitutional that police should have known not to follow it or (2) the legislature wholly abandoned its responsibility to pass constitutional legislation. *Krull*, 480 U.S. at 355; *Daniel*, 291 Kan. 490, Syl. ¶ 8; *State v. Meitler*, 51

5

Kan. App. 2d 308, 314, 347 P.3d 670 (2015). Dawes argues that both of these exceptions apply here. He didn't argue below that the legislature wholly abandoned its duty, but we will consider this claim for the first time on appeal because it's a purely legal question involving no disputed facts. See *State v. Bowen*, 299 Kan. 339, 354, 323 P.3d 853 (2014) (listing exceptions to general rule that issues can't be raised for the first time on appeal).

Before we go further into Dawes' arguments, let's briefly reorient ourselves around the facts in this case. The police relied on an unconstitutional implied-consent statute to draw Dawes' blood, so the blood draw was unconstitutional. *Dawes*, 2015 WL 5036690, at *5. Evidence from an unconstitutional search is usually excluded, but the district court found that the good-faith exception to the exclusionary rule applied because at the time of the blood draw, the statute hadn't yet been held unconstitutional. Did the district court reach the wrong conclusion, either because the statute was obviously unconstitutional or because the legislature wholly abandoned its responsibility to pass constitutional laws?

In a word, no. Our court previously considered this exact question in *Meitler*, which involved essentially the same situation: a blood draw from an unconscious defendant after a serious traffic accident, based on the unconstitutional implied-consent statute. 51 Kan. App. 2d at 310; see *State v. McClellan*, No. 115,164, 2017 WL 839720, at *12-13 (Kan. App. 2017) (unpublished opinion) (holding that good-faith exception applied where officer had read the defendant implied-consent advisories that were later held unconstitutional), *petition for rev. filed* March 31, 2017. The *Meitler* court found that at the time of the defendant's blood draw in 2012, an objectively reasonable police officer should not have known that the implied-consent statute was unconstitutional, 51 Kan. App. 2d at 315, and we agree with that conclusion. Dawes' blood draw was also in 2012, and at that point, no Kansas appellate court had found the implied-consent statute unconstitutional. The first case to do so was filed two years later, in our court's decision in *Declerck*, 49 Kan. App. 2d 908, Syl. ¶ 6.

6

The implied-consent statutory scheme had existed in Kansas since 1955, so police officers were familiar with the general contours of this law: when an officer believed a driver was intoxicated, the officer would give the driver advisories about breath and blood tests for intoxication and then ask the driver to consent to one of those tests. See *Meitler*, 51 Kan. App. 2d at 316. The section of the implied-consent statute that *Declerck* found was unconstitutional—and that officers relied on in *Meitler* and in this case, K.S.A. 2016 Supp. 8-1001(b)(2)—provided that a serious car accident combined with a traffic offense would constitute probable cause for a breath or blood test. Probable cause is a concept widely used in the context of Fourth Amendment searches and seizures, so police officers are familiar with it; nothing about the phrase appearing in the statute (or any other language in the statute) would have alerted a reasonable officer to the provision's unconstitutionality. See *Meitler*, 51 Kan. App. 2d at 316.

We also agree with the *Meitler* majority that the legislature did not wholly abandon its responsibility to pass constitutional laws when it passed subsection (b)(2) of the implied-consent statute. 51 Kan. App. 2d at 317-19; see *McClellan*, 2017 WL 839720, a *13 (reaching same conclusion for implied-consent advisories). We generally presume that the legislature enacts constitutional laws. *State v. Petersen-Beard*, 304 Kan. 192, 194, 377 P.3d 1127 (2016). And all legislators must take an oath to uphold the United States Constitution. See Kan. Const. art. 15, § 14; *Krull*, 480 U.S. at 351 (citing U.S. Const., art. VI, cl. 3). So we must begin by assuming that the legislature hasn't abandoned its responsibility. In fact, since the United States Supreme Court first applied the good-faith exception in this context, as far as we are aware, no court in the country has found that a state legislature wholly abandoned its responsibility to pass constitutional laws. See *Meitler*, 51 Kan. App. 2d at 317. The legislature had a legitimate aim in passing this statute: to combat drunk driving. As the *Meitler* majority detailed, nothing in the legislative history suggested that the purpose of the statute was to evade or override the Fourth Amendment. 51 Kan. App. 2d at 318.

7

We recognize that one of our colleagues has a contrary view. *Meitler*, 51 Kan. App. 2d at 319-36 (Atcheson, J., dissenting). He pointed to legislative history that indicates the legislature intended to make it easier for police to test drivers for intoxication, but that purpose doesn't equate with a desire to violate the Fourth Amendment. See 51 Kan. App. 2d at 333-35 (Atcheson, J., dissenting). In fact, when the legislature passed subsection (b)(2) of the implied-consent statute, it had heard testimony that two other states had upheld similar statutes, giving it reason to believe that the statute was constitutional. 51 Kan. App. 2d at 318. The legislature's reliance on these out-of-state examples doesn't become unreasonable simply because at some later date a Kansas appellate court wasn't persuaded by them. See *Meitler*, 51 Kan. App. 2d at 333 (Atcheson, J., dissenting); *Declerck*, 49 Kan. App. 2d at 918. In summary, we find no evidence to support Dawes' claim that the legislature wholly abandoned its responsibility to pass constitutional laws when it passed subsection (b)(2) of the implied-consent statute.

The district court correctly concluded that the good-faith exception to the exclusionary rule applied to this case, and we affirm its judgment.