NOT DESIGNATED FOR PUBLICATION

No. 117,781

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER GEORGE SOTO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed October 19, 2018.
Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Nathan L. Dickey*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and POWELL, JJ.

PER CURIAM:  Christopher George Soto appeals the denial of his motion to suppress. Officers arrested Soto for a warrant that appeared active in their databases, searched him, and found drugs. But Soto had been arrested for the warrant the previous day and bonded out. He contends the evidence obtained in the search incident to his arrest should be suppressed because the arrest was illegal. We affirm.

On February 8, 2016, Salina Police Officers Matthew Halton and Steven Ediger randomly ran the license plate number of a vehicle while on patrol. Both Salina's local

1

files and the National Crime Information Center (NCIC) database showed the registered owner, Soto, had an active warrant. After confirming Soto was the driver of the vehicle, Officers Halton and Ediger stopped the vehicle. The only reason for the stop was the active warrant.

The officers ordered Soto out of the vehicle and asked him to place his hands behind his back. While Officer Ediger handcuffed him, Soto explained he had been arrested on the warrant and had bonded out the day before. After telling Soto they needed to confirm that, Officer Halton searched Soto. Officer Halton discovered a small plastic baggie. After Officer Halton discovered the baggie, dispatch notified them Soto may have been previously picked up on the warrant by the Kansas Highway Patrol.

Officer Halton advised Soto of his rights, and Soto admitted the baggie contained cocaine.

The State charged Soto with possession of cocaine, possession of tetrahydrocannabinol, and possession of drug paraphernalia. Soto moved to suppress, arguing all physical evidence was the product of an illegal search.

Both officers testified at the suppression hearing. In addition to testifying about the stop, both officers testified they use their mobile computer daily and the information on it from law enforcement databases is generally reliable. Officers Halton and Ediger also testified there were times individuals lied about whether a warrant had been satisfied. During cross-examination, Officer Halton acknowledged he could have waited to see whether the warrant was still active before searching Soto. Deputy Alan Wagner testified he had arrested Soto on February 7, 2016, and transported him to the Hodgeman County jail. After hearing argument, the district court took the matter under advisement.

2

The district court denied the motion to suppress. It found the officers acted reasonably despite not waiting to confirm whether Soto was telling the truth when he told them he had already satisfied the warrant.

The case was tried on stipulated facts. The district court found Soto guilty of possession of cocaine, marijuana, and drug paraphernalia. Soto appealed.

On appeal, Soto challenges the district court's denial of his motion to suppress. The material facts underlying the district court's decision are not in dispute; only the court's conclusion is at issue. When the material facts to a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016).

Soto argues we should follow the Pennsylvania Supreme Court in *Com. v. Johnson*, 624 Pa. 325, 86 A.3d 182 (2014), and hold that §15 of the Kansas Constitution Bill of Rights does not include any exceptions to the exclusionary rule. In *Johnson*, the defendant was pulled over for a broken taillight. When the trooper ran Johnson's name, he was advised there was an active arrest warrant. The trooper arrested Johnson and discovered 37 packets of heroin, cell phones, and cash. Later, the trooper determined the arrest warrant was not valid and should have been recalled, since Johnson had been picked up for the warrant nine days earlier. The Pennsylvania Supreme Court held the Pennsylvania Constitution does not incorporate a good-faith exception to the exclusionary rule, so his arrest was illegal and the evidence had to be suppressed. 624 Pa. at 335.

Soto contends the district court erred when it denied his motion to suppress because the court incorrectly found the good-faith exception to the exclusionary rule applied. He asserts §15 of the Kansas Constitution Bill of Rights is similar to Article I, §8

3

of the Pennsylvania Constitution. He argues that, like Article I, §8 of the Pennsylvania Constitution, §15 does not incorporate an exception to the exclusionary rule. He also contends application of the exclusionary rule "would encourage the adoption of more efficient measures to purge executed arrest warrants and thereby ensure the privacy rights of Kansas citizens." These arguments are not persuasive.

In *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010), the Kansas Supreme Court explained that §15 of the Kansas Constitution Bill of Rights provides the same protection as the Fourth Amendment to the United States Constitution. We are bound by United States Supreme Court precedent even when a government action is challenged purely under §15 of the Kansas Constitution. 291 Kan. at 498. While the Kansas Supreme Court has the authority to extend §15 constitutional protections beyond the protections of the Fourth Amendment, it has declined to do so. 291 Kan. at 498.

The Fourth Amendment protects citizens from unreasonable searches and seizures. *Herring v. United States*, 555 U.S. 135, 139-40, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009). Under the judicially created exclusionary rule, suppression of illegally obtained evidence may be warranted to deter future violations of the Fourth Amendment. 555 U.S. at 139-40. However, a violation of the Fourth Amendment does not necessarily require application of the exclusionary rule. As the *Herring* Court noted, "exclusion 'has always been our last resort, not our first impulse,' . . . and our precedents establish important principles that constrain the application of the exclusionary rule. [Citation omitted.]" 555 U.S. at 140. In *Arizona v. Evans*, 514 U.S. 1, 11, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995), the Court explained:

> "As with any remedial device, the rule's application has been restricted to those instances where its remedial objectives are thought most efficaciously served. Where 'the exclusionary rule does not result in appreciable deterrence, then, clearly, its use . . . is unwarranted.' [Citations omitted.]"

4

In *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), which established the "good faith" exception to the exclusionary rule, the Court held suppression of illegally obtained evidence is not warranted when officers reasonably rely on a search warrant subsequently found to be invalid. The United States Supreme Court has held "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence," *Herring*, 555 U.S. at 144.

In *Herring*, the defendant went to the impound lot to retrieve something from his impounded truck. An investigator asked the county's warrant clerk, Sandy Pope, to check for any outstanding warrants for Herring. She did not find any outstanding warrants and the investigator asked her to check with her counterpart in a neighboring county. Her counterpart indicated there was an arrest warrant for Herring. The investigator arrested Herring and discovered methamphetamine in his pocket and a pistol in his vehicle. But Pope's counterpart could not find the physical warrant and learned the warrant had been recalled five months earlier.

At trial, Herring moved to suppress the evidence because his arrest was illegal since the warrant had been rescinded. The federal district court denied the motion, finding the officers had a good-faith belief the warrant was valid. The Eleventh Circuit Court of Appeals affirmed. The United States Supreme Court found law enforcement's reliance on an erroneously unrecalled warrant was not deliberate, reckless, or grossly negligent conduct, and applied the good faith exception to the exclusionary rule. 555 U.S. at 147-48.

Based on the Kansas Supreme Court's holding in *Daniel*, *Herring* is binding precedent even though Soto challenges the denial of suppression solely under §15 of the Kansas Constitution Bill of Rights. In *Herring*, the United States Supreme Court held the

5

good faith exception to the exclusionary rule applied when an officer relied on an erroneously unrecalled warrant. Thus, despite Soto's contentions otherwise, the good faith exception to the exclusionary rule could apply here.

The question, then, is whether the good faith exception to the exclusionary rule *should* apply under these facts. Soto argues the exclusionary rule should apply because both officers acknowledged Soto informed them he had already been arrested on the warrant. As a result, he asserts this "put them on notice that their arrest . . . was illegal." Soto asserts it was unreasonable for the officers to arrest him without trying to confirm his statement by contacting the trooper who arrested him or the jail where he was processed and bonded out.

The State contends the variations between this case and *Herring* are distinctions without a difference. It notes neither law enforcement officer could recall an occasion when their databases were incorrect. It asserts "[t]he officers reasonably relied on the most current information as it was made available to them, and searched Soto incident to Soto's arrest."

In *United States v. Brown*, 618 Fed. Appx. 743 (4th Cir. 2015) (unpublished opinion), the Fourth Circuit Court of Appeals grappled with this issue. In *Brown*, a law enforcement officer initiated a routine traffic stop and received a hit from NCIC indicating Brown had an active arrest warrant. The officer asked dispatch to consult with the Maryland Transit Authority to determine if the warrant was active. He received confirmation that it was active. The officer informed Brown there was a warrant for his arrest and Brown told him the warrant had been quashed. Without investigating Brown's statement, the officer executed the warrant. The search of Brown's person and car revealed two cellphones, $1,900 in cash, a handgun, 38 bags of heroin, and a duffel bag containing $20,000 in cash. Brown's warrant had, in fact, been quashed.

6

Brown moved to suppress evidence obtained from the search of his person and vehicle, arguing the exclusionary rule should apply since the officer unreasonably relied on the representation the warrant was valid. The district court denied his motion and found the good faith exception to the exclusionary rule applied because the officer reasonably relied on information from NCIC and the Maryland Transit Authority. On appeal, Brown argued, in part, that the officer's failure to investigate after being informed the warrant had been quashed indicated willful blindness. The Fourth Circuit Court of Appeals affirmed, because Brown's statement that the warrant had been quashed was not clear evidence of that fact, particularly since the officer received specific information from NCIC and the Maryland Transit Authority. 618 Fed. App. at 745-46.

Additionally, while the *Herring* opinion does not mention whether Herring informed the investigator the warrant had been recalled, Herring's brief to the Supreme Court suggests he did. According to Herring's brief:

> "[Investigator Mark] Anderson and a colleague, Deputy Neil Bradley, stopped petitioner. Bradley informed petitioner that he was under arrest. When petitioner asked 'Under arrest for what?,' Bradley told him: 'There is a warrant on you in Dale County.' *Id.* at 20. Although petitioner explained that he had recently seen the Dale County Circuit Judge and that no such warrant existed, *id.* at 63, 65, the officers nonetheless arrested petitioner immediately, *id.* at 20, rather than awaiting physical confirmation of the warrant from the Dale County Sheriff's Office." Brief for Petitioner at 5, *Herring*, 555 U.S. 135, 2008 WL 2043967, at *5.

There was testimony that this was the first time in 17 years that the information which was gained through the two databases had been wrong.

Like Brown and Herring, Soto informed the officers the warrant was no longer active. But like the officer in *Brown*, Officers Halton and Ediger believed the warrant was active based on their local database and NCIC. In addition, both Officer Halton and

7

Officer Ediger testified there were times individuals lied about whether a warrant had been satisfied. There is no evidence Officer Halton or Officer Ediger had knowledge—from a source other than Soto—that Soto's warrant had been satisfied. Their reliance on the local database and NCIC, which they considered reliable, was not reckless or grossly negligent nor was it the result of recurring or systemic negligence. Under *Brown* and *Herring*, application of the exclusionary rule to these facts would not serve to deter the improperly updated databases. Thus, the district court did not err when it denied Soto's motion to suppress.

Affirmed.