No. 55,192
STATE OF KANSAS, *Appellant*, v. JOE N. COMPTON, *Appellee*.

No. 55,233
STATE OF KANSAS, *Appellant*, v. THOMAS A. WILLIAMS, *Appellee*.

No. 55,218
STATE OF KANSAS, *Appellant*, v. KELLY R. KEENAN, *Appellee*.

No. 55,303
STATE OF KANSAS, *Appellant*, v. JOSE RAMIREZ, *Appellee*.

(664 P.2d 1370)

Opinion filed June 10, 1983.

*Philip D. Lunt,* county attorney, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for appellant in *State v. Compton* and *State v. Williams.*

*Richard N. Raleigh,* of Medicine Lodge, argued the cause and was on the brief for appellee Compton.

*Michael S. Holland,* of Russell, argued the cause and was on the brief for appellee Williams.

*James D. Hall,* assistant district attorney, *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, were on the brief for appellant in *State v. Keenan.*

No appearance for appellee Keenan.

*Paul D. Handy,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellant in *State v. Ramirez.*

*Dennis M. Bahr,* of Garden City, was on the brief for appellee Ramirez.

The opinion of the court was delivered by

MILLER, J.: The State of Kansas appeals in these drunken

driving cases from orders of the trial courts declaring portions of K.S.A. 8-1001 and 8-1567 unconstitutional. The defendants, Joe N. Compton, Thomas A. Williams, Kelly R. Keenan and Jose Ramirez, were each charged with driving a motor vehicle while under the influence of alcohol (DUI) in violation of K.S.A. 8-1567. None of the cases has been tried. In *Compton* and *Williams*, the State appeals as a matter of right under K.S.A. 22-3602(*b*)(1) from orders finding K.S.A. 8-1001(*c*) and K.S.A. 8-1567(*c*), (*d*), and (*e*) unconstitutional and dismissing the case. In *Keenan*, the State brings an interlocutory appeal under K.S.A. 22-3603 from an order suppressing evidence of the results of the blood alcohol test administered to the defendant, based upon a finding that K.S.A. 8-1001(*c*) is unconstitutional. In *Ramirez*, the State brings an interlocutory appeal, K.S.A. 22-3603, from an order suppressing evidence of defendant's refusal to take a blood alcohol test, based on the trial court's holding that K.S.A. 8-1001(*c*) is unconstitutional. Because of the identity of issues, the cases were consolidated for hearing on appeal.

Both K.S.A. 8-1001 and 8-1567 were amended by the legislature in 1982. See L. 1982, ch. 144, §§ 3, 5. The 1982 amendments are the versions of these statutes before us in this case. They read in pertinent part as follows:

"8-1001. . . . (*a*) Any person who operates a motor vehicle upon a public highway in this state shall be deemed to have given consent to submit to a chemical test of breath or blood, to determine the alcoholic content of the person's blood whenever the person is arrested or otherwise taken into custody for any offense involving operating a motor vehicle under the influence of alcohol in violation of a state statute or a city ordinance and the arresting officer has reasonable grounds to believe that prior to arrest the person was driving under the influence of alcohol. The test shall be administered at the direction of the arresting officer.

. . . . .

"(*c*) *If the person so arrested refuses a request to submit to a test of breath or blood, it shall not be given and the person's refusal to submit to the test shall be admissible in evidence against the person at any trial for driving under the influence of alcohol.* . . . (Emphasis added.)

"8-1567. . . . (*a*) No person shall operate any vehicle within this state while under the influence of alcohol.

. . . . .

"(*c*) Upon a first conviction of a violation of this section, a person shall be sentenced to not less than 48 hours' imprisonment or 100 hours of public service nor more than 6 months' imprisonment and fined not less than $200 nor more than $500, or by both such fine and imprisonment. The person convicted shall not be eligible for release on probation or suspension or reduction of sentence .

until the minimum sentence has been satisfied. In addition, the court shall enter an order which (1) restricts the person convicted to operating a motor vehicle on the highways of this state only in going to or returning from the person's place of employment in the course of the person's employment or during a medical emergency or in going to or returning from the place such person is required to go to attend an alcohol and drug safety action program as provided in K.S.A. 8-1008 or a treatment program as provided in K.S.A. 8-1008 for a period of time of at least 90 days and not to exceed one year and (2) requiring that the person enroll in and successfully complete an alcohol and drug safety action program as provided in K.S.A. 8-1008 or a treatment program as provided in K.S.A. 8-1008, or both such education and treatment programs. In the event the person convicted has a suspended or revoked driver's license, the court shall not make the restricted license, provided under this subsection, applicable until any such suspension or revocation is terminated. *No plea bargaining agreement shall be entered into nor shall any judge approve a plea bargaining agreement entered into for the purpose of permitting a person charged with a violation of this section, or any ordinance of a city in this state which prohibits the acts prohibited by this section, to avoid the mandatory penalties established by this subsection or the ordinance.* For the purpose of this subsection, entering into a diversion agreement pursuant to K.S.A. 22-2906 et seq. shall not constitute plea bargaining.

"(*d*) On a second conviction of a violation of this section, a person shall be sentenced to not less than 90 days' nor more than one year's imprisonment and fined not less than $500 nor more than $1,000. The person convicted shall not be eligible for release on probation or suspension of sentence until the minimum sentence has been satisfied . . . . *No plea bargaining agreement shall be entered into nor shall any judge approve a plea bargaining agreement entered into for the purpose of permitting a person charged with a violation of this section, or any ordinance of a city in this state which prohibits the acts prohibited by this section, to avoid the mandatory penalties established by this subsection or the ordinance.*

"(*e*) On the third or subsequent conviction of a violation of this section, a person shall be sentenced to not less than 90 days' nor more than one year's imprisonment and fined not less than $1,000 nor more than $2,500. The person convicted shall not be eligible for release on probation or suspension or reduction of sentence. . . . *No plea bargaining agreement shall be entered into nor shall any judge approve a plea bargaining agreement entered into for the purpose of permitting a person charged with a violation of this section, or any ordinance of a city in this state which prohibits the acts prohibited by this section, to avoid the mandatory penalties established by this subsection or the ordinance.*" (Emphasis added.)

We turn first to the issue of the alleged unconstitutionality of K.S.A. 8-1001(*c*). All of the claims and all of the decisions of the trial courts were premised upon the claim that the admissibility of an accused's *refusal* to take the test violated his or her Fifth Amendment privilege against self-incrimination.

At the time the cases were presented to and considered by the

trial courts, a similar provision of a South Dakota statute had been held violative of an accused's Fifth Amendment privilege by the South Dakota Supreme Court. *State v. Neville,* 312 N.W.2d 723 (S.D. 1981). The United States Supreme Court granted certiorari (456 U.S. 971) and on February 22, 1983, reversed the South Dakota ruling. *South Dakota v. Neville,* 459 U.S. _____, 74 L.Ed.2d 748, 759-60, 103 S.Ct. 916 (1983). The court noted that the State has the right, under *Schmerber v. California,* 384 U.S. 757, 16 L.Ed.2d 908, 86 S.Ct. 1826 (1966), to require a person suspected of driving while intoxicated to submit to a blood alcohol test; that the State did not compel the accused to refuse to take the test, but gave him a choice; and that the right of refusal is simply one granted by legislative grace and not a right of constitutional dimension. Thus, the court concluded that "a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." It further concluded that a failure of the officer to warn the accused that the fact of refusal could be used against him was "not the sort of implicit promise to forego use of evidence that would unfairly 'trick' respondent if the evidence were later offered against him at trial." It found that the use of the evidence of refusal does not interfere with the fundamental fairness required by due process.

Section 10 of the Kansas Bill of Rights is coextensive with the Fifth Amendment. *State v. Faidley,* 202 Kan. 517, 520, 450 P.2d 20 (1969). We have not previously held and do not now hold that Section 10 offers privileges more extensive than those of the Fifth Amendment. The *Neville* decision settles this issue. As the author concluded in a post-*Neville* article, Comment, *The New Kansas Drunk Driving Law: A Closer Look,* 31 Kan. L. Rev. 409, 422 (1983), "[T]he constitutionality of section 8-1001(c)—admitting a driver's refusal to take the BAC test—is no longer open to dispute." We agree.

The taking or the refusal to take the test is an option provided by the legislature. Both the results of the test, if taken, or the refusal to take it, if declined, are admissible in evidence, and the admission of such evidence does not offend the Fifth Amendment privilege against self-incrimination or the right to due process.

One further matter relating to K.S.A. 8-1001(c) deserves attention. In the *Ramirez* case the trial court held that before evidence of a refusal may be received in evidence, the State must establish that the accused's decision not to take the test was made knowingly, voluntarily and intelligently. This was error. Since the refusal is not the exercise of a constitutional right, but merely a matter of grace bestowed by the legislature, we hold that there is no requirement that an explanation of the accused's right to refuse the test or of the consequences of that refusal be given. The officer administering the test may not mislead the accused, but he or she need not explain the possible consequences of a refusal to take the test. This follows our ruling in *Hazlett v. Motor Vehicle Department,* 195 Kan. 439, 407 P.2d 551 (1965), where in Syl. ¶ 1 we said:

"Under the provisions of K.S.A. 8-1001 and related statutes, there is no duty placed on an arresting officer, making an arrest for the offense of driving while under the influence of intoxicating liquor, to explain the consequences of a refusal to submit to a blood alcohol chemical test."

We turn next to consider the constitutional challenge to K.S.A. 8-1567(c), (d) and (e). That portion of all three subsections, emphasized above, was held in two of the cases to be violative of the separation of powers doctrine. All three subsections contain the same language:

"No plea bargaining agreement shall be entered into or shall any judge approve a plea bargaining agreement entered into for the purpose of permitting a person charged with a violation of this section . . . to avoid the mandatory penalties established by this subsection . . . ."

Let us consider what this provision does and what it does not do. It prohibits plea bargaining for the purpose of permitting one charged with DUI to avoid the mandatory penalties established by the act.

It does not prohibit plea bargaining in any other type of case, nor does it prohibit plea bargaining in cases where DUI is charged when the purpose of the plea bargain—and its ultimate effect—is not to permit the accused to avoid the mandatory DUI penalties. It does not interfere with or curtail the power of the prosecutor to review the evidence in good faith and determine what charges should be filed, or to amend or reduce the charges as initially filed, or to dismiss the prosecution.

As an example, assume that a defendant is charged with DUI,

driving left of center, failing to signal and failing to stop at a stop sign. If the prosecutor reviews the evidence and concludes that the evidence is adequate to sustain convictions on all charges, the plea bargaining prohibition could work two different ways.

(1) Defense counsel offers to enter a plea of guilty to all charges except DUI if the State will dismiss (or reduce) that one. The prosecutor may not accept and the court may not approve such a plea bargain as it would permit the defendant to avoid the mandatory penalties established by the statute.

(2) Defense counsel offers to enter a plea of guilty to the DUI charge if the State will dismiss the remaining traffic charges. The prosecutor may, if he or she wishes, accept, and the court may approve such a plea bargain, since the accused would not thereby avoid the penalties established by the DUI law.

Let us assume that upon the filing of the same four charges, the prosecutor reviews the evidence and concludes that the evidence is *not* sufficient to sustain a conviction of DUI since the breath test results were negative and the arresting officer's testimony alone is insufficient. A plea bargain is unnecessary because charges which cannot reasonably be proven should not be maintained or used for "leverage." The prosecutor should voluntarily dismiss or reduce the DUI charge. Once this has been done, there is no prohibition upon plea bargaining as to the remaining traffic charges.

Now let us consider the separation of powers doctrine. The standards to be applied for determining whether a statute violates that doctrine were recently stated in *State v. Greenlee*, 228 Kan. 712, 715-16, 620 P.2d 1132 (1980):

"The basic meaning of the separation of powers doctrine is that the whole power of one department should not be exercised by the same hands which possess the whole power of either of the other departments. *Dreyer v. Illinois*, 187 U.S. 71, 47 L.Ed. 79, 23 S.Ct. 28 (1902); *Van Sickle v. Shanahan*, 212 Kan. 426. It does not necessarily follow, however, that an entire and complete separation is either desirable or was ever intended by the framers of the Constitution. The fact that the powers of one department may overlap with another department's powers has long been a recognized fact. Throughout the judicial history of this state early decisions attempted to apply the doctrine strictly, refusing to tolerate any overlapping of powers. *State v. Johnson*, 61 Kan. 803, 60 Pac. 1068 (1900). The more recent cases have modified the doctrine, taking a more pragmatic, flexible and practical approach giving recognition to the

fact there may be a certain degree of blending or admixture of the three powers of government and that absolute separation of powers is impossible. *Leek v. Theis,* 217 Kan. 784, 539 P.2d 304 (1975). See also *Nixon v. Administrator of General Services,* 433 U.S. 425, 53 L.Ed.2d 867, 97 S.Ct. 2777 (1977).

"There have been a number of cases in Kansas dealing with the separation of powers and in them the following general principles are established:

"(1) A statute is presumed to be constitutional. All doubts must be resolved in favor of its validity, and before a statute may be stricken down, it must clearly appear the statute violates the constitution. *Leek v. Theis,* 217 Kan. 784.

"(2) When a statute is challenged under the constitutional doctrine of separation of powers, the court must search for a usurpation by one department of the powers of another department on the specific facts and circumstances presented. *Leek v. Theis,* 217 Kan. at 785; *State, ex rel., v. Fadely,* 180 Kan. 652, 308 P.2d 537 (1957).

"(3) A usurpation of powers exists when there is a significant interference by one department with operations of another department. *State, ex rel., v. Bennett,* 219 Kan. 285, 547 P.2d 786 (1976).

"(4) In determining whether or not a usurpation of powers exists a court should consider (a) the essential nature of the power being exercised; (b) the degree of control by one department over another; (c) the objective sought to be attained by the legislature; and (d) the practical result of the blending of powers as shown by actual experience over a period of time. *State, ex rel., v. Bennett,* 219 Kan. 285."

See also *Manhattan Buildings, Inc. v. Hurley,* 231 Kan. 20, 32, 643 P.2d 87 (1982); *State, ex rel., v. Bennett,* 219 Kan. 285, 547 P.2d 786 (1976).

Also, we have recently discussed the nature of the powers exercised by a prosecutor in the separation of powers context. In *State v. Dedman,* 230 Kan. 793, 797, 640 P.2d 1266 (1982), we held that the doctrine prohibits a trial court from ordering the prosecutor to subject the victim of a crime to a polygraph examination. We said:

" 'Generally speaking  .   .   .   the executive power is the power to enforce the laws, and the judicial power is the power to interpret and apply the laws in actual controversies.' *Van Sickle v. Shanahan,* 212 Kan. 426, Syl. ¶ 8, 511 P.2d. 223 (1973). The prosecuting attorney is a member of the executive, not judicial, branch of government. Although the Kansas Constitution contains no express provision requiring the separation of powers, 'separation is accomplished by the establishment of the three branches of government and the distribution of the various sovereign powers to each of them.' 212 Kan. at 440. Allowing judicial oversight of what is essentially a function of the prosecutor's office would erode that power.

"This same decision was reached recently by the Colorado Supreme Court in *People v. Dist. Ct. In And For Tenth, Etc.,* 632 P.2d 1022 (Colo. 1981). There the district judge had ordered the district attorney to subject the victim of the crime

to a polygraph examination. The court stated: "The district attorney belongs to the executive branch of the government. *People v. District Court,* 186 Colo. 335, 527 P.2d 50 (1974). As an executive officer charged with the duty to prosecute persons for violations of the criminal laws, he has a broad discretion in the performance of his duties. See *1 ABA Standards for Criminal Justice, The Prosecution Function,* 3-3.9 (2d Ed. 1980). The scope of this discretion extends to the power to investigate and to determine who shall be prosecuted and what crimes shall be charged. . . .

" 'The district attorney's broad discretion in determining whether a charge shall be filed involves the primary determination of whether the evidence of the crime is sufficient to warrant the filing of the charge. This obviously depends upon his evaluation of the reliability and credibility of the witnesses to the crime, including the complaining witness or victim of the crime. Whether this evidence shall be tested by ordinary means of interrogation or by other means, such as requiring a potential witness to submit to a polygraph examination, is a matter of prosecutorial discretion. This function is not subject to judicial control or direction. . . .

" 'It is clear from the record before us that the district attorney, in evaluating the reliability and credibility of the key witness, did not believe it necessary to subject the witness of the alleged burglary to a polygraph examination in preparation of the People's case. For the court to order the district attorney to do so for the benefit of the defense, in our view, amounts to an impermissible judicial intrusion into the prosecutor's function.' 632 P.2d at 1024."

The prosecutor has the power to enter into plea bargain agreements. This is an aspect of the prosecutor's broad discretion in determining whether a particular charge should be filed or maintained. The discretion exercised in plea bargaining, however, is not unfettered; certain standards and guidelines are applicable. See ABA Standards Relating to the Prosecution Function § 3.11, p. 102 (1971), and *State v. Byrd,* 203 Kan. 45, 51, 453 P.2d 22 (1969). The trial judge, of course, is not bound by a plea agreement; he or she is charged with the responsibility of reaching an independent decision on whether to approve the charge or sentence concessions. The judge, however, may not refuse to permit the prosecutor to amend the charges if the prosecutor wishes to do so. See *State v. Pruett,* 213 Kan. 41, 47, 515 P.2d 1051 (1973), and ABA Standards Relating to the Prosecution Function there cited. Cox and Strole, in *S. B. 699—A Comment on Kansas' New "Drunk Driving" Law,* 51 J.K.B.A. 230, 235 (1982), characterize plea bargaining as *"not solely prosecutorial, but rather more of a blending of powers."* True, the courts have an important part in plea bargaining, but plea

discussions are primarily a part of the prosecutorial or executive power.

Thus the question before us is: Do the prohibitions against plea bargaining contained in K.S.A. 8-1567(c), (d) and (e) constitute a substantial legislative encroachment upon the executive powers of the prosecutor? We think not. Applying the *Greenlee* standards to the controversy before us, we start with the presumption that the challenged statute is constitutional. We then search for a usurpation by one department of the powers of another, mindful that a usurpation exists only when there is a *significant* interference by one department with the operations of another. The interference created here is quite limited, as we have previously observed, and the statute does not attempt to control prosecutorial discretion as to plea bargaining in any case except when DUI is charged. Nor does it attempt to control discretion as to charge, reduction or dismissal where a prosecutor may upon review of the available evidence determine in good faith the appropriateness of such action. There is, however, a usurpation, limited though it may be, and it is significant in the cases to which it applies.

To determine whether a significant usurpation of powers exists we must also consider the nature of the power being exercised. The essential nature of the prosecutorial power is executive, and the trial court, judicial. The legislature, by section 1567(c), (d) and (e), controls both prosecutorial and judicial discretion in the limited area to which the statute applies.

The objective sought to be attained by the legislature is to deter drunken driving and thus to reduce the injuries, deaths and property damage attributable to it by making the penalties for DUI certain and severe. This objective is consistent with the legitimate aims of both the legislative and executive branches of government, and more particularly of the prosecutor. It is also an objective of the judiciary. Deterrence, the discouragement of potential offenders, has long been recognized as one of the legitimate goals of sentencing. See Guides for Sentencing, published by the Council of Judges of the National Council on Crime and Delinquency, p. 3 (2d ed. 1974), and The State Trial Judge's Book, pp. 288-89 (2d ed. 1969). That the problem is a serious one is well illustrated in the opening paragraph of a recent Note in the Washburn Law Journal, *The New Kansas DUI*

*law: Constitutional Issues and Practical Problems,* 22 Washburn L.J. 340-41 (1983):

"More than half of all highway accidents are a direct result of drunk drivers. In 1980, the Kansas Highway Patrol arrested 2,733 people for driving while under the influence of alcohol (DUI) and attributed 195 deaths and 5,350 injuries to the abuse of alcohol, yet the judiciary has been reluctant to apply the maximum penalties in many DUI cases where the social drinker is concerned, because of the strictness of the penalties. Additionally, current sanctions imposed on offenders have not had an adequate impact on the serious problem drinker."

The trial judge in *Compton* and *Williams,* as well as the appellees here, read section 1567(c), (d) and (e) to place all of the responsibility for charging a DUI offense in the hands of the arresting officer. They read the statute as prohibiting the prosecutor from reducing or dismissing the charge if it is later determined that the evidence does not warrant a DUI charge. We do not read the statute so broadly. It is narrowly drawn only for the purpose of prohibiting a standard plea bargain, a guilty plea in return for a lesser reduced charge. The prosecutor retains his discretionary authority to initially charge the accused with a DUI offense, some lesser offense, or not at all; he may also decide that a DUI charge has been improvidently filed, and should be reduced or dismissed. The prosecutor's decision, however, must be made in good faith upon a review of the available evidence and may not be made as the result of an agreement with the accused to plead to a lesser charge in order to avoid the mandatory penalties established by the act.

This case is somewhat analogous to challenges to mandatory minimum sentence or "gun" acts designed to discourage the criminal use of firearms. In *State v. Freeman,* 223 Kan. 362, 574 P.2d 950 (1978), 100 A.L.R.3d 418, we upheld K.S.A. 21-4618, which denies probation or suspension of sentence to any defendant convicted of certain crimes in which the defendant used a firearm in the commission thereof, when that statute was challenged as violative of the separation of powers doctrine because it infringed upon the judicial power and discretion in sentencing. We held that 21-4618 is not such a restriction on the judicial power as would constitute an impermissible legislative usurpation of the court's prerogatives. Similar statutes have been almost uniformly upheld against separation of powers challenges in other jurisdictions. See Annot., Validity of Statutes Prohibiting

or Restricting Parole, Probation, or Suspension of Sentence in Cases of Violent Crimes, 100 A.L.R.3d 431 § 6; and Annot., Narcotics Offenses—Mandatory Sentence, 81 A.L.R.3d 1192 § 6. The legislative proscription of plea bargaining in DUI cases represents a similar effort to ensure that DUI offenders serve mandatory sentences.

The statute now before us contains a very limited encroachment upon the executive power, and its aim is to combat a major problem. We hold that the encroachment is not sufficient to constitute a violation of the constitutional separation of powers doctrine, and that K.S.A. 8-1567 is a valid enactment.

The judgments of dismissal in *State v. Compton* and *State v. Williams,* and the judgments suppressing certain evidence in *State v. Keenan* and *State v. Ramirez,* are all reversed, and the cases are remanded to the respective trial courts for further proceedings in conformity with this opinion.

LOCKETT, J., not participating.